IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICARDO ARAMBULA, | § | |
| Petitioner, | § | |
| | § | 3:17-CV-340-K (BT) |
| v. | § | 3:15-CR-337-K (BT) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION

Before the Court is Petitioner Ricardo Arambula's ("Petitioner") petition to

vacate, set-aside, or correct sentence under 28 U.S.C. § 2255. For the following reasons,

the petition is DENIED.

## I.

Pursuant to a plea agreement, Petitioner pleaded guilty to conspiracy to

possession with intent to distribute 50 kilograms or more of marijuana, in violation of

21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C). The Court sentenced him to a below-

guidelines sentence of 48 months confinement. He did not file an appeal.

On January 28, 2017, Petitioner filed the instant petition. He argues:

1.    Due to his counsel's ineffective assistance, and his limited understanding

       of English, he forfeited his appeal rights and pleaded guilty;

2.    He received ineffective assistance of counsel when:

      (A)    Counsel did not discuss the case with him, did not explain the

appellate waiver, and misled him;

(B)     Counsel did not obtain a safety-valve reduction;

(C)     Counsel did not properly advise him about the fast-track program; and

(D)     Counsel did not ensure that he received a motion for downward departure under U.S.S.G. § 5K1.1.

On April 10, 2017, the government filed its answer.  Petitioner did not file a reply.

## II.

Between January 2013 and August 2013, DEA agents investigated a marijuana trafficking organization led by co-conspirator Orlando Delgado.  (PSR ¶ 11.)  Delgado supplied and distributed marijuana in Dallas as well as cities in Illinois, Indiana, and Alabama. (PSR ¶ 11.)  Agents identified co-conspirator Juan Olivares as Delgado's associate and courier. (PSR ¶ 11.)  In an intercepted phone call, Olivares coordinated the pickup of a 200-pound marijuana shipment from Petitioner.  (PSR ¶ 12.)  The investigation revealed multiple telephone calls between Olivares and Petitioner regarding marijuana distribution.  (PSR ¶ 12.)

In August 2013, DEA agents arrested several members of the Delgado drug trafficking organization (DTO).  (PSR ¶ 13.)  Agents arrested Delgado and Olivares at their apartment.  (PSR ¶ 13.)  A search of the apartment resulted in the seizure of 100

pounds of marijuana, a kilogram of cocaine, $581,794 in cash, and drug ledgers. (PSR ¶ 13.) A search of a trucking company involved in the DTO revealed 100 pounds of marijuana, and a search at a location in Chicago resulted in the seizure of 567 pounds of marijuana. (PSR ¶ 13.) After his arrest, Delgado called Petitioner at the direction of DEA agents and arranged for 200 pounds of marijuana to be delivered in 30 to 40 minutes. (PSR ¶ 14.) However, because there were not enough agents to support the operation, Delgado was directed to cancel the delivery. (PSR ¶ 14.)

After the arrests, several cooperating defendants identified Petitioner as a source of marijuana supply and a courier of multiple-ton marijuana shipments. (PSR ¶¶ 17-22.) In July 2015, DEA agents developed information about Petitioner's whereabouts. He was arrested after a traffic stop. (PSR ¶ 15.)

On February 11, 2016, Petitioner pleaded guilty to a superseding information charging him with conspiracy to possess with intent to distribute marijuana. (CR Dkt. No. 24-27, 30.) Petitioner's total offense level was 25, and when combined with his criminal history category of I, his advisory guideline range was 57 to 71 months imprisonment. (PSR Add. at 2.) The Court sentenced Petitioner to a below-guidelines sentence of 48 months imprisonment.

## III.

**1.     Guilty Plea**

Petitioner claims that due to his counsel's ineffective assistance, and his limited understanding of English, he forfeited his appeal rights and pleaded guilty. To the extent Petitioner claims that his guilty plea was involuntary, the claim is without merit.

A defendant's guilty plea must be made voluntarily, and the defendant must "make related waivers knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993).

Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of the guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002).

Further, "[w]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed." *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) (*quoting United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994)).

In this case, the record shows Petitioner voluntarily pleaded guilty and that he was fully informed of his rights. An English/Spanish translator was present, and Petitioner stated he had no difficulty understanding the translation. (ECF No. 46 at 4.) The Court informed him of his constitutional rights, and he stated he understood those rights. (*Id*. at 5-6.) Petitioner stated he understood the charge against him. (*Id*. at 13.) He was read the essential elements of the charge, he stated he understood the essential elements, and admitted he committed each element. (*Id*. at 14.) Petitioner agreed that the plea agreement and plea agreement supplement were translated to Spanish, were explained to him, and he understood them. (*Id*. at 15-16.) Petitioner stated he understood his appeal rights and the appeal waiver. (*Id*. at 17-18.) Petitioner was read the maximum and minimum penalties of the offense, and he stated he understood them. (*Id*. at 19-20.) Petitioner agreed that the Factual Resume was translated to Spanish, that his attorney reviewed it with him, and that he understood the Factual Resume. (*Id*. at 22.) Petitioner stated he was pleading guilty voluntarily, and was not coerced or threatened into pleading guilty. (*Id*. at 18.) The Court finds Petitioner voluntarily and

knowingly entered his guilty plea.

## 2. Ineffective Assistance of Counsel

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

When a petitioner argues his guilty plea was not voluntary due to the ineffective assistance of counsel, he must show that his counsel's advice to plead guilty fell below

the range of competence demanded of an attorney in a criminal case. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Armstead v. Scott*, 37 F.3d 202, 206 (5ᵗʰ Cir. 1994). Further, he must show prejudice by establishing "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial." *Armstead*, 37 F.3d at 206.

### A.    Case Discussions

Petitioner claims his counsel did not discuss his case with him, failed to explain his right to appeal or the appellate waiver in the plea agreement, and misled him by telling him he would receive a sentence reduction by cooperating with the government.

The record contradicts Petitioner's claims. At the rearraignment hearing, Petitioner stated his attorney discussed the charges, sentencing, and sentencing guidelines with him. (ECF No. 46 at 8.) He stated the superseding indictment was translated into Spanish for him and he understood the charges. (*Id*. at 13.) He also stated that the plea agreement and plea agreement supplement were translated into Spanish for him, that both documents were explained to him, that he reviewed both documents with his attorneys, and that he understood the documents. (*Id*. at 16.)

The record also shows Petitioner was aware of his limited appeal rights, and that he understood these rights. The record shows as follows:

COURT:          Would you look next on page 6, at paragraph 12, which is titled "Waiver of Right to Appeal or Otherwise Challenge Sentence." And it indicates that you are doing just that, waiving your right to appeal or otherwise challenge your

|  |  |  |
|---|---|---|
|  |  | sentence and conviction except under the limited circumstances set out in the third line of that paragraph. |
| DEFENDANT: | Yes. | |
| COURT: | Did you discuss specifically with one or both of your attorneys the rights that you have under the law to appeal or otherwise challenge your sentence and conviction? | |
| DEFENDANT: | Yes. | |
| COURT: | Do you understand those rights? | |
| DEFENDANT: | Yes. | |

(*Id*. at 17.)  Petitioner's claim is without merit.

Petitioner also claims counsel misled him by stating the government would file a motion for reduction of sentence under U.S.S.G. § 5K1.1.  The plea agreement supplement, however, clearly states that it is within the government's sole discretion whether to file a motion for reduction of sentence due to substantial assistance.  (ECF No 28 at 1.)  Petitioner stated he read and understood the plea agreement supplement. (ECF No. 46 at 15-16.)  Petitioner's claim is without merit

### B.     Criminal History and Safety Valve

Petitioner claims his counsel was ineffective when counsel failed to object that Petitioner's criminal history was enhanced, and when counsel failed to obtain a safety-valve reduction.

The record shows that Petitioner's criminal history was not enhanced.  The PSR stated Petitioner had no prior criminal history, and that his criminal history was a

Category I.  (ECF No. 35 at ¶ 43.)  The record also shows Petitioner received the two-level safety-valve reduction.  *See* PSR Addendum at 1-2, (ECF No. 39 at 1-2.)  These claims are without merit.

### C.    Conclusory claims

Petitioner claims counsel "did not expose my personal excruciating circumstances," and that "the fact that I do not have the economic means to afford a private lawyer really made a difference in my case."  (ECF No. 2 at 7.)  Petitioner has failed to explain his personal excruciating circumstances or explain how the lack of private counsel made a difference in his case.  Petitioner's conclusory claims are denied.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

### D.    Fast-Track

Petitioner claims his counsel promised he would receive fast-track early disposition credit.  The fast-track program allows the government to give defendants credit for entering an early guilty plea pursuant to a written agreement.  *See* U.S.S.G. § 5K3.1; *United States v. Gomez-Herrera*, 523 F.3d 554, 561 (5th Cir. 2008).  It is within the government's discretion whether to offer a fast-track departure.  *Gomez-Herrera*, 523 F.3d at 561.

At Petitioner's rearraignment, he stated that all of the terms of his agreement with the government were contained in the written plea agreement and plea agreement

supplement.  (ECF No. 46 at 18.)  The plea agreement and plea agreement supplement, however, did not contain any provision for fast-track consideration.  Further, Petitioner stated that other than the plea agreement and plea agreement supplement, no one had made any promise or assurance of any kind to induce him to plead guilty.  (*Id*.) Petitioner has failed to establish ineffective assistance of counsel.

## E.    Substantial Assistance

Petitioner claims his counsel told him he would receive a departure for substantial assistance under U.S.S.G. § 5K1.1, but that his counsel did not inform the Court about his cooperation with the government.  (ECF No. 2 at 9.)  The record shows, however, that counsel filed a motion for variance arguing, in part, that Petitioner identified his supplier and debriefed with the government.  (ECF No. 41 at 4-5.)  Counsel also raised this cooperation at sentencing.  (ECF No. 47 at 7-8.)  Petitioner's claim is without merit.

Petitioner has failed to show his counsel was deficient.  He has also failed to show that "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial."  *Armstead*, 37 F.3d at 206.

IV.

The Court hereby DENIES the petition to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255.

SO ORDERED.

Signed April 10th, 2018.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE